**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RUSSELL G. KANE, JACOB M. NOLL,
PAMELA L. ALWARD, GERALD SCHULTZ,

    Plaintiffs,

                              CASE NO. 03-CV-70691-DT
v.                             HONORABLE DENISE PAGE HOOD

KELLY SERVICES, INC.,

    Defendant.
_____/

**ORDER ACCEPTING IN PART AND REJECTING IN PART**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**AND**
**NOTICE OF STATUS CONFERENCE**

The matter before the Court is Magistrate Judge Donald A. Scheer's Report and Recommendation dated December 9, 2005. Plaintiffs filed a timely objection on December 22, 2005. Defendant filed a response to Plaintiffs' objections on January 5, 2006. The Magistrate Judge concluded that, as a matter of law, each Plaintiff has failed to establish the existence of a genuine issue of material fact with regard to their respective age discrimination claims and recommended that this court dismiss as to each plaintiff.

### I.  STANDARD OF REVIEW

A.  REPORT AND RECOMMENDATION

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636. This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection

1

is made." 28 U.S.C. § 636(b)(1)(C). It "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

### B. SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 547, 587, 106 S. Ct. 1348, 1356 (1986); *see also Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984), *B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 591-92 (6th Cir. 2001). "[T]he court is not permitted to judge the evidence or make findings of fact." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *see also Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994). In order for Plaintiff to survive summary judgment, he "must come forward with specific facts showing that there is a 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S. Ct. at 1356.

### II. WRONGFUL TERMINATION - ADEA

Disputes not involving direct evidence of age discrimination follow the burden shifting test established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Plaintiffs are first required to establish a *prima facie* case of age discrimination. Once that burden is satisfied, it shifts to the Defendant to provide non-discriminatory reasons for its chosen course of action. The burden then shifts back to Plaintiffs to provide evidence tending to show that the non-discriminatory reasons

2

proffered by Defendant constitute nothing more than pretext for decisions actually motivated by impermissible age bias. *Id.*; *See Rowan v. Lockheed Martin*, 360 F.3d 544, 547 (6th Cir. 2004).

## A. PRIMA FACIE CASE

A *prima facie* case of age discrimination is established by a proper showing that, 1) Plaintiffs were members of a protected class; 2) they were discharged; 3) they were qualified for the positions they held; and 4) they were replaced by younger workers. *Cox v. DOT*, 53 F.3d 146, 150 (6th Cir. 1995). In cases involving a reduction in force ("RIF"), the fourth prong of this test is modified and an additional burden is placed on a Plaintiff to show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp. Inc.*, 896 F. 2d 1457, 1465 (6th Cir. 1990).

There is no dispute that each Plaintiff has provided the requisite showing for the first three prongs. Each Plaintiff is over the age of forty. Each Plaintiff was discharged. Each Plaintiff was qualified for the position they held at the time of termination. The primary issue then becomes the satisfaction of the fourth prong. First, have Plaintiffs proffered younger, comparable workers who were retained through the RIF? *McDonnell Douglas,* 411 U.S. at 792. Second, is there sufficiently probative direct, circumstantial, or statistical evidence that tends to show age discrimination? *Barnes*, 896 F.2d at 1466.

To assist in determining whether the fourth prong of a *prima facie* case has been established, the parties rely on *Moradian v. SEMCO Energy Gas Co.*, 315 F. Supp. 2d 870, 875 (E.D. Mich. 2004). *Moradian* stands for the proposition that Plaintiffs may satisfy the fourth prong of a *prima facie* case by showing that he or she "possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff," but that the evidence "must be sufficiently

3

probative to allow a fact finder to believe that the employer intentionally discriminated against the plaintiff because of age. *Id*.

The Magistrate Judge recommends that this Court apply the rule of *Moradian* to the facts of the present case. For reasons to follow, this Court declines to follow that recommendation.

*Moradian* is inapplicable to the facts of this case given the specialized nature of the positions held by Plaintiffs prior to the RIF. "Kelly corporate structure was apparently subject to labyrinthine 'matrix' relationships in which various management level members of the IT Department were subdivided into specialized units, each of which was designed for a different task." (R & R at 29). Plaintiffs' prior placements were not positions normally associated with the general day to day business endeavors of the company. These positions were created specifically to perform a single, vital task for the company. Plaintiffs were hand picked to convert the company's financial and reporting software from an older, internally created package to a newer, external software package. There are no other individuals possessing the same job as Plaintiffs. As no individuals served in "the same positions as [Plaintiffs]," it is difficult to imagine then that there would be anyone serving in those same positions who happened to be younger. *Moradian,* 315 F. Supp. 2d 875. Based on these facts, *Moradian* is inapplicable to the present situation.

The Sixth Circuit addressed the possibility that a number of potential means may be employed in ascertaining intent of age discrimination, providing a non-exclusive list of possibilities.

> For example, a plaintiff could establish a *prima facie* case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff. Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive as in *Laugesen*. [Circumstantial evidence of age discrimination could be found in an ambiguous letter referring to the number of years the plaintiff was with the company.] The guiding principle is that the evidence must be sufficiently probative to allow a factfinder to

4

believe that the employer intentionally discriminated against the plaintiff because of age.

*Barnes*, 896 F.2d at 1466 (citations omitted).

The Court will rely on the guiding principle set forth in *Barnes*; namely, assessing whether Plaintiff has alleged facts "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id*.

### i.  COMPARABLE YOUNGER EMPLOYEES

The Magistrate Judge recommends that this Court find that there are no younger employees retained after the RIF who are comparable to Plaintiffs. For the following reasons, this Court declines to follow that recommendation.

Defendant subdivides its employees into separate categories based on the division in which they work and the level of their employment within the company. With respect to the fourth prong of *McDonnell Douglas*, Plaintiffs must show that a younger, comparable employee was retained. A comparable employee in this case is one who shares the same job group *and* division as each Plaintiff. This is due to two predominant factors. First, this manner of subdivision originates with the Defendant. Defendant has policies in place to prevent against discrimination of all types, be it race, disability, or age. The fact that Defendant has subdivided its employees into job groups and divisions, and then measures across those divisions signifies that, to the Defendant, this is the best manner in which it can gauge whether or not it is engaging in discriminatory practices. Second, by limiting the relevant aspects of a comparable to a particular job group and division, the Court recognizes that in certain cases, there are employees who are employed in unique positions for certain projects only which may be difficult to show a relevant comparable. Plaintiffs were compared to other individuals in the same job group and division by Defendant in determining who

5

to terminate, not to particular positions. From its actions, it can reasonably be inferred that Defendant determined that these other individuals were comparable in some sense in order to make the determination as to which individuals to terminate. In the present situation, comparing Plaintiffs to those in the same job group and division provides the optimal means by which a fact finder may determine the existence of probative evidence that would enable a fact finder to infer the existence of age discrimination. *Barnes*, 896 F.2d at 1466.

*Nobel v. Brinker Intern, Inc*., 391 F.3d 715 (6th Cir. 2004) is cited for the proposition that a "plaintiff must show that comparators are nearly identical in all of the relevant respects" in order to be deemed similarly situated for employment discrimination purposes. (R & R at 39). This sentiment is echoed in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998); a sentiment established by the Sixth Circuit in *Mitchell v. Toledo Hosp*., 964 F.2d 577 (6th Cir. 1992). *Ercegovich* involved a problem very similar to that before this Court. It dealt with how to relate individuals who are being terminated in the context of a reduction in force who hold unique positions. After a discussion of *Mitchell*, the *Ercegovich* court distanced itself from a narrow reading and application of *Mitchell*. It disapproved of literal comparisons of employee job functions, noting that:

> A prima facie standard that requires the plaintiff to demonstrate that he or she was similarly-situated in every aspect to an employee outside the protected class receiving more favorable treatment removes from protective reach of the anti-discrimination laws employees occupying "unique" positions, save in those rare cases where the plaintiff produces direct evidence of discrimination. *Ercegovich*, 154 F.3d at 353.

"If the non-protected employee to whom the plaintiff compares himself or herself must be identically situated to the plaintiff in every single aspect of their employment, a plaintiff whose job responsibilities are unique to his or her position will *never* successfully establish a prima facie case."

*Id.* Under such a narrow reading of *Mitchell*, "an employer would be free to discriminate against those employees occupying "unique" positions." *Id.* The court concluded by holding, "we simply require that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects. A contrary approach would undermine the remedial purpose of anti-discrimination statutes." *Id.* (emphasis in original); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507 (D.C. Cir. 1995); *Byrd v. Ronayne*, 61 F.3d 1026 (1st Cir. 1995). What specific factors are then determined to be relevant is done on a case by case determination of the court. *Ercegovich*, 154 F.3d at 352.

The Magistrate Judge's Recommendation requires that Plaintiffs establish that there were those retained after the RIF who served in almost identical job functions. The Magistrate Judge's Recommendation, in essence, takes the emphasis from the word 'relevant' in the *Ercegovich* rule and places it instead on the word 'all' immediately preceding it. *Ercegovich*, 154 F.3d at 353. In effect, the Magistrate Judge is requiring a nearly exact correlation between positions. However, what may constitute a relevant factor need not directly correlate to that of a retained employee, but is to be determined on a case by case basis by the courts.

> Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, *but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly situated."*

*Ercegovich*, 154 F.3d at 352.

While both parties and the Magistrate Judge have focused on relevant skill sets and qualifications for each position in an attempt to discover who a true comparable would be, such inquiry is misplaced and is more appropriate in determining whether Defendant's legitimate non-

7

discriminatory reasons for terminating Plaintiffs was pretext for an improper age bias. Based upon the principles asserted in *Mitchell, Pierce,* and *Ercegovich*, this Court finds that the factors relevant to this particular circumstance are not the narrow job functions of an individual's unique position during the course of performing a unique task for Defendant, but rather the combination of job group and IT division each individual Plaintiff was a part of during the course of RIF termination decisions. It is possible for a trier of fact to infer age discrimination when younger individuals of a same job group and in the same IT division are retained while older employees of the same job group and division are terminated.

Based on the foregoing, each Plaintiff has established that Defendant has retained younger, comparable employees. Jacob Noll was a director in AD, placing him in Job Group 11. He has asserted comparables Theresa Dooley and Pamela Blankenship. Both Dooley and Blankenship work in AD and are in Job Group 11. Both are younger than Plaintiff Noll. As such, Plaintiff Noll has satisfied this portion of the fourth prong of a *prima facie* case. Russell Kane was a Job Group 12 manager in AD. He argued that other Job Group 12 managers in AD, listing Mark Trogru, Anita Young, Jenny Mesara, and Nicole Rogers as comparables. Each of these individuals is younger that Plaintiff Kane. He also has satisfied this portion of the fourth prong of a prima facie case. Pamela Alward was also a Job Group 12 manager in AD. She identified Sandra Alward-Bury and Nancy Fox as comparables. Both Alward-Bury and Fox are younger than Plaintiff Alward and both are employed as managers in AD, placing them in Job Group 12. Plaintiff Alward has satisfied this portion of the fourth prong. Finally, Gerald Schultz survives summary judgment on this point. Schultz was a senior manager, Job Group 12 in ETS. The individual he identifies as comparable is Sandra Elliot, also a manager in ETS. Ms. Elliot is younger than Plaintiff Schultz. Like the rest of

8

Plaintiffs, Schultz has satisfied this portion of the fourth prong. In the case of each Plaintiff, it is possible for a fact finder to infer from the retention of younger comparable employees that Defendant improperly considered age in determining who to terminate.

### ii.  STATISTICAL EVIDENCE

As stated previously, in a controversy involving a reduction in force, Plaintiffs must do more than show that comparable younger employees were retained.  *Barnes*, 896 F.Supp.2d at 1466.  To satisfy the *Barnes* modification of *McDonnell Douglas*, Plaintiffs have proffered statistical evidence and the testimony of an expert to show that Defendant's firing practices were premised on improper age considerations. "Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class." *Barnes*, 896 F.2d at 1466 (citing *Laugesen*, 510 F.2d at 317; *see also McDonnell Douglas*, 411 U.S. at 804-05).  In order to survive summary judgment, "[t]he statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity."  *Barnes*, 896 F.2d at 1466.

There have been three separate statistical analyses performed to determine what role chance had to play in Defendant's terminations in the January 2002 RIF.  The first statistical analysis was performed by Defendant prior to any terminations.  This analysis was done in accordance with Defendant's internal policies as established by controlling management in order to determine whether the company was engaging in discriminatory practices.  A second analysis was performed by Plaintiffs' expert.  Finally, a third statistical analysis was performed by Defendant's expert to rebut that of Plaintiffs' expert.  In each analysis, discrimination was measured by examining those

terminated from Job Group 11 and Job Group 12 instead of those terminated by Ms. Wilson and Ms. Perrault.

The Magistrate Judge finds fault with Plaintiffs' proffered statistical analysis on two grounds. First, he concludes that the analyses are fatally flawed because they compare individuals across job groupings rather than division. The Magistrate Judge found that in order for the sample to be probative of intent to discriminate, the statistics must compare employees terminated by the same terminating individual. In this case, that would mean that only those terminated by Ms. Wilson would be compared to others considered for termination by Ms. Wilson and those terminated by Ms. Perrault would only be compared to others considered for termination by Ms. Perrault. The Magistrate Judge's second argument asserts that even if the statistical analyses are deemed trustworthy, they show nothing more than that random chance was not a factor in the terminations rather than an affirmative demonstration of intent to discriminate on the part of Defendant. The Court rejects these findings as set forth below.

### a. Magistrate Judge's Primary Position

The dismissal of Plaintiffs' and Defendant's respective statistical analyses is due to one allegedly fatal flaw. "The arbitrary division of IT employees in work groups 11 and 12 has no statistical significance ... Because intent is the critical issue in a disparate treatment case, only a comparison between persons evaluated by the same decision maker is probative of discrimination." (R & R at 27-28) (*citing Smith v. Xerox Corporation*, 196 F.3d 358, 370-71 (2nd Cir. 1999)).

The Magistrate Judge found that the statistical analyses employed in this case were fatally flawed because it did not focus on Ms. Wilson and Ms. Perrault as separate, individual decision makers. He held that, under *Smith*, "only a comparison between persons evaluated by the *same*

10

*decision maker* is probative of discrimination." *Id*. (emphasis added).  While this may adequately state the general rule, because there is evidence to suggest that Ms. Wilson and Ms. Perrault employed identical layoff criteria, there is, in effect, one decision maker.

Both Ms. Wilson and Ms. Perrault are employees of Defendant, acting on behalf of Defendant.  There is testimonial evidence in the record indicating that both Ms. Wilson and Ms. Perrault applied identical layoff criteria as mandated by Defendant. (Wilson p. 154; Defendant's EEO Responses; Ex. 5 p. 3; Ex. 6 p. 3; Ex. 24 p. 3; Ex. 18; Ex. 19).  There is a question of fact as to whether Ms. Wilson and Ms. Perrault were the ultimate decision makers in light of the testimony that they used identical layoff criteria mandated by Defendant. (Wilson p. 154; Defendant's EEO Responses; Ex. 5 p. 3; Ex. 6 p. 3; Ex. 24 p. 3; Ex. 18; Ex. 19; *c.f*. Def. Supp. Br. Ex. G; Perrault p. 164-65, 183, 197).

Defendant has claimed that there was no identical layoff criteria and that Ms. Wilson and Ms. Perrault acted independently of one another in all respects. (Def. Obj. at p. 2-3)  The argument that individuals of Job Group 11, some of whom were terminated by Ms. Wilson and some by Ms. Perrault, were compared to other individuals based on varying criteria does nothing more than create an issue of fact that is most appropriate for a jury to decide.

The same reasoning holds true for Plaintiffs of Job Group 12.  Although members of ETS and AD at the manager level were compared with one another for purposes of the statistical analyses in this case, the parties disagree as to whether identical or varying criteria was utilized in reaching layoff decisions.  Because Plaintiffs have offered testimony tending to show that the layoff criteria employed by Ms. Wilson and Ms. Perrault was the same, they have created a question as to whether

Ms. Wilson and Ms. Perrault were ultimate decision makers acting under a mandate from Defendant or whether they acted independently of one another.

Also relevant to this case is the issue of limited comparability across divisions which is addressed in *Barnes* as follows:

> The only serious problem with the statistics in this case ... is that all of the employees in each division are not interchangeable. Only a few employees occupy positions comparable to those occupied by each of the plaintiffs. While this diminishes the probative value of the evidence, we do not believe that it vitiates it. *The discharge decisions were made by persons who had control over all of the division employees, not merely employees who worked in each plaintiff's group.*

*Barnes*, 896 F.2d at 1468 (emphasis added). As was the case in *Barnes*, the court does not limit what may constitute statistical significance to a division of employees engaged in similar job functions. The mere fact that Plaintiffs were employed in unique positions does not vitiate the probative nature of the statistical analyses. *Id*. Although both Ms. Perrault and Ms. Wilson were responsible for terminating vice presidents and directors of separate divisions, there is evidence that the layoff criteria utilized by both individuals was identical. Whether that criteria was the same or not is an issue best suited for the trier of fact.

### b.  Magistrate Judge's Alternate Position

In asserting his alternate position, the Magistrate Judge states that, "[e]ven if plaintiffs' statistical evidence was deemed trustworthy, it could do no more than show that chance was most likely not responsible for the perceived difference in treatment of the older employees. The proffered evidence could not, by itself, support a conclusion that age discrimination must have been the cause for the disparity." (R & R at 28) (*citing Smith v. Xerox Corp*., 196 F.3d at 371 (2nd Cir. 1999)).

First, Plaintiffs do not bear the burden of providing direct evidence of age discrimination.

> *McDonnell Douglas* formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject the job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.

*Barnes*, 896 F.2d at 1464 (*citing Int'l Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 358 (1977)).

The Sixth Circuit adds by way of footnote,

> A prima facie case under *McDonnell* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not [sic] act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as [age].

*Barnes*, 896 F.2d at 1464 n.8 (*citing Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). This presumption is the logical underpinning of the *Barnes* decision, providing a foundation by which it determined a subsequent showing of discrimination was necessary in RIF cases where a plaintiff has only established the elements of *McDonnell*. This was the motivator for the court to require some additional direct, circumstantial, or statistical evidence in establishing a *prima facie* case. This was not used to negate the probative nature of a statistical analysis, but rather, a primary reason to find them probative in the first place - to help provide supplemental evidence tending to show the discriminatory intent of a defendant. The Court finds that the Magistrate Judge's reliance on *Smith v. Xerox*, *supra*, is misplaced and that he erred in holding that the statistical analyses

13

proffered by Plaintiffs failed, as a matter of law, to satisfy the modified fourth prong of a *prima facie* case.

### c. Statistical Findings

The Court finds that, when considered in a light most favorable to Plaintiffs, the statistical analyses proffered by Plaintiffs' expert is probative and could allow a reasonable fact finder to infer age discrimination. The Court agrees with the Magistrate Judge's analysis as to Defendant's objections. Defendant improperly relies on *Stidham v. Minnesota Mining and Mfg., Inc.*, 399 F.3d 935 (8th Cir. 2005), given the Sixth Circuit's opinion in *Barnes*. The Court incorporates the Magistrate Judge's reasoning pertaining to the application of *Barnes* to the substantive aspects of the statistical analyses. (R & R at 26-27).

The guiding principle in establishing a *prima facie* case as set forth in *Barnes* is whether each Plaintiff has alleged facts "sufficiently probative to allow a fact finder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes*, 896 F.2d at 1466. Because Defendant has properly alleged younger comparable employees who were retained through the RIF of January 8, 2002 and because there is statistical evidence that would enable a trier of fact to infer that Defendant discriminated against each Plaintiff on the basis of their age, Plaintiffs have satisfied the first part of the *McDonnell Douglas* burden shifting test and established a *prima facie* case of age discrimination.

### B. NON-DISCRIMINATORY JUSTIFICATIONS FOR TERMINATING PLAINTIFFS

When a plaintiff has established a *prima facie* case of age discrimination, the burden then shifts to a defendant to provide legitimate, non-discriminatory reasons its actions. *McDonnell Douglas*, 411 U.S. at 802. Defendant asserts that the sole reason for terminating Plaintiffs was the

14

reorganization of the company in response to adverse economic pressures. Defendant further asserts that, in the case of Plaintiff Kane, an additional justification for his termination was his negative behavioral issues. Plaintiffs do not challenge whether Defendant has met this threshold showing. Defendant, therefore, has alleged facts sufficient to support an inference that there were legitimate, non-discriminatory reasons for terminating Plaintiffs.

### C. PRETEXT

Once a defendant has proffered a non-discriminatory justification for terminating a plaintiff, the burden once again shifts to the plaintiff to establish that the non-discriminatory justification for terminating the plaintiff was a pretext for improper age biases. *McDonnell Douglas*, 411 U.S. at 802.

Plaintiffs assert numerous factors comparing Plaintiffs' qualifications to other younger employees who were retained through the RIF. (P. Obj. p. 22-31). While this argument was made earlier in an attempt to establish a *prima facie* case, it is more on point in determining whether Plaintiffs have alleged sufficient facts for a fact finder to infer that Defendant's actions were pretext for an improper age bias. Plaintiffs allege that, given the criteria testified to by Ms. Wilson and Ms. Perrault, Plaintiffs should have been retained. They argue, and the record is replete with evidence that would allow a trier of fact to infer that they were terminated in favor of younger, less qualified employees. *Id.* For example, Plaintiffs assert that the retained individuals "did not have the technical or managerial skills of the Plaintiffs. Further, all of the employees who remained were relatively new employees to Kelly and all of them were also new to their Project Manager and Director roles." *Id*. at 22-31) (citing references to Plaintiffs' Response to Defendant's Motion for Summary Judgment, pp. 12-16, 29-33; Plaintiffs' Supplemental Response to Defendant's Supplemental Brief dated Sept. 13, 2005, pp. 7-11).

Defendant disagrees, claiming that Plaintiffs were terminated for reasons particular to the needs of the corporation on a going forward basis. They argue that because Plaintiffs' skills did not comport with the future goals of Kelly Services, Plaintiffs were terminated. The resolution of this disagreement is best suited for a jury. Whether Defendant truly terminated Plaintiffs based upon improper age considerations or whether they were terminated for other reasons associated with the RIF and needs of the company is the ultimate issue of fact in this matter. It is an issue for the trier of fact.

Plaintiffs have satisfied the initial showing required to establish a *prima face* case under *McDonnell Douglas*. Considering the facts in a light most favorable to Plaintiffs, they have created a question of fact as to the fourth prong of a *prima facie* case by alleging younger individuals who were in the same division and job function who were not terminated and provided probative statistical analyses that could enable a trier of fact to conclude that Defendant discriminated against Plaintiffs on account of their age.

With respect to Plaintiff Kane, Defendant has also maintained that, in addition to the RIF, Plaintiff Kane was terminated due to his negative behavioral issues. In response, Plaintiff Kane argues that his behavioral issues had long been resolved and were not a legitimate reason to support his selection for layoff. (P. Obj. p. 12-13). Kane argues that although Defendant has a policy of outlining important behavioral and performance concerns in performance reviews, none of Kane's reviews prior to the layoff mention any concerns about his behavior. (*Id*.; Ex. 12). Kane also offers testimony from past managers that Kane had resolved his behavioral and interpersonal issues. Perhaps most probative is the fact that there was little, if any, concern of behavioral issues

16

independent of the RIF.  Given this evidence in the record, there is a question of fact for a jury to resolve.

Plaintiffs have successfully survived Defendant's motion for summary judgment.  Plaintiffs Noll, Alward, Schultz, and Kane because there is a question of fact as to whether the RIF was pretext for terminating each Plaintiff.  Because there is a question of fact surrounding the impact of Kane's behavioral and interpersonal issues and the role it had in Defendant's decision to terminate him, Plaintiff Kane also survives summary judgment.  With respect to the termination claims, this Court finds that Plaintiffs have established a *prima facie* case and have provided sufficient evidence to allow a reasonable trier of fact to determine that the justifications proffered by Defendant are merely pretext for an improper age bias.  This Court DENIES Defendant's motion with respect to the termination claims of each Plaintiff.

### III.  RETALIATION AND FAILURE TO REHIRE - ADEA

Plaintiffs argue that Defendant retaliated against them for opposing a violation of their rights.  They contend that because Defendant failed to rehire them or consider them for positions for which they were otherwise qualified, they have suffered harm.  For reasons stated by the Magistrate Judge in his Report and Recommendation, each Plaintiff's respective claim of retaliation does not meet the threshold of a prima facie case.  For reasons and conclusions discussed by the Magistrate Judge with respect to the retaliation and failure to rehire claims, this Court GRANTS Defendant's motion for summary judgment as to each Plaintiff.

### IV.  CONCLUSION

Accordingly, for the reasons set forth above,

IT IS ORDERED that the Report and Recommendation **(Docket No. 76, filed December 9, 2005)** is ACCEPTED IN PART and REJECTED IN PART.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment **(Docket No. 48, filed April 20, 2005)** is DENIED as to Count I, Violation of the ADEA - Wrongful Termination; is GRANTED as to Count III, Violation of the ADEA - Failure to Rehire; and is GRANTED as to Count V, Violation of the ADEA - Retaliation.

IT IS FURTHER ORDERED that the Motion for Leave to File Affidavit **(Docket No. 46, filed April 14, 2005)** is GRANTED.

IT IS FURTHER ORDERED that a Status Conference be held in this matter on **May 15, 2006, 4:30 p.m.**

                                              /s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: March 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2006, by electronic and/or ordinary mail.

                                              s/William F. Lewis
Case Manager